## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**AMBER STROUGH**, a citizen of Colorado, Individually,
as mother of Macayla Razes, as next friend of R.S.,
and as Personal Representative of Macayla Razes, deceased;
**R.S.,** a citizen of Nebraska and a minor,
by and through his grandmother and next friend, Amber Strough; and
**MADISON STROUGH**, a citizen of Colorado,

Plaintiffs,

v.

**GENERAL MOTORS LLC**, a Delaware limited liability company
with its principal place of business located in Michigan and with a sole
member, General Motors Holdings LLC, which is a Delaware LLC
with a principal place of business located in Michigan which, in turn,
has a sole member, General Motors Company, which is a Delaware
corporation with a principal place of business in Michigan;
**GENERAL MOTORS HOLDINGS LLC**, a Delaware LLC with a
principal place of business located in Michigan with a sole member,
General Motors Company, which is a Delaware corporation with a
principal place of business in Michigan;
**GENERAL MOTORS COMPANY**, a Delaware corporation with
its principal place of business located in Michigan;
**TRW VEHICLE SAFETY SYSTEMS INC.**, a Delaware corporation
with its principal place of business located in Michigan;
**TRW AUTOMOTIVE U.S. LLC**, a Delaware corporation with its
principal place of business located in Michigan;
**TRW AUTOMOTIVE INC.**, a Delaware corporation with its principal
place of business located in Michigan;
**ZF TRW AUTOMOTIVE HOLDINGS CORP.**, a Delaware corporation
with its principal place of business located in Michigan; and
**ZF FRIEDRICHSHAFEN AG**, a German corporation with its principal
place of business located in Germany.

Defendants.

## COMPLAINT FOR DAMAGES

-1-

COME NOW the Plaintiffs, by and through their attorneys, and as their Complaint against the Defendants and each of them, state and allege as follows:

## INTRODUCTION

1.     This is a product liability and wrongful death action to recover damages suffered by the Plaintiffs arising out of an automobile accident on or about December 23, 2016 in Logan County, Colorado involving a Chevrolet Impala automobile.   The driver of the subject Impala, Macayla Razes, suffered fatal injuries in the accident. Plaintiffs seek damages for wrongful death and for personal injuries.

## PARTIES

2.     Plaintiff Amber Strough is a citizen of Colorado and mother and heir of decedent, Macayla Razes.  She brings this action individually, as Personal Representative of Macayla Razes, deceased, and as mother of Macayla Razes, deceased.  Amber Strough also brings this action as grandmother and next friend of R.S.

3.     Plaintiff R.S. is a citizen of Colorado and the minor son and heir of decedent, Macayla Razes. He brings this action by and through his grandmother and next friend, Amber Strough.  Plaintiff R.S. may be and may, at times, have been referred to or been known as R.R.

4.     Plaintiff Madison Strough is a resident of Colorado and the sister of the deceased Macayla Razes.  Plaintiff Amber Strough, Plaintiff R.S. and Plaintiff Madison Strough may hereinafter collectively be referred to as "Plaintiffs"

5.     Plaintiffs suing in their representative capacities do so and bring this action in such capacities for the benefit of all respective heirs and statutory beneficiaries of Macayla Razes, deceased.

6.    Defendant GENERAL MOTORS LLC is a Delaware limited liability company with its principal place of business located in Michigan and doing business in Colorado.   The sole member of General Motors LLC is General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business located in Michigan. The sole member of General Motors Holdings LLC is General Motors Company which, as set forth herein, is a Delaware corporation with its principal place of business located in Michigan. General Motors LLC may have formerly been known as General Motors Company and NGMCO, Inc., and General Motors LLC is the corporate successor to General Motors Corporation.   General Motors LLC is, and General Motors Corporation was, engaged in the business of designing, manufacturing, testing, engineering, approving, marketing, promoting, advertising distributing and selling automobiles and component parts of automobiles in the State of Colorado and throughout the world.   General Motors LLC may also be known as General Motors, LLC.   Service on General Motors LLC may be had by serving its registered agent for service, Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

7.    In and as a result of the bankruptcy proceedings involving General Motors Corporation, a "new" "General Motors" company was constituted now called "General Motors LLC," a Delaware limited liability company which purchased or otherwise acquired all the substantial tangible and intangible assets of the "old" General Motors Corporation, including "old" General Motors Corporation's manufacturing plants and equipment, inventory, records of designs, patents, vendor lists, dealer lists and contracts, customer lists, the GM trademark, and also continued to retain the predecessor's employees in virtually the same capacities.   General Motors LLC has continued to conduct virtually the same business, including maintaining the

same product lines, as General Motors Corporation.   By virtue of such circumstances, Plaintiffs allege that Defendant General Motors LLC is a successor in interest to General Motors Corporation, which designed, tested, manufactured and marketed the subject Impala automobile at issue in this lawsuit.   As such, General Motors LLC is subject to successor liability under products liability law in Colorado.

8.     As is further specified and discussed herein, General Motors LLC also assumed the product liabilities and related liabilities arising out of accidents involving General Motors vehicles occurring after the completion of the bankruptcy proceedings involving General Motors Corporation.   That assumption of liabilities includes and encompasses the subject accident involving the subject Impala.

9.     Defendant GENERAL MOTORS HOLDINGS LLC is a Delaware LLC with a principal place of business located in Michigan and doing business in Colorado.   General Motors Holdings LLC has a sole member, General Motors Company, which is a Delaware corporation with a principal place of business in Michigan.  Service on General Motors Holdings LLC may be had by serving its registered agent for service, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

10.     Defendant GENERAL MOTORS COMPANY is a Delaware corporation with its principal place of business located in Michigan and doing business in Colorado.  Service on General Motors Company may be had by serving its registered agent for service, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

11.     Defendants General Motors LLC, General Motors Holdings LLC and General Motors Company may hereinafter collectively be referred to as "GM," "General Motors" or "the GM Defendants."

12.     GM designed, tested, manufactured, marketed and sold the subject 2004 Impala that Macayla Razes was driving at the time of the accident giving rise to this complaint.

-4-

13.   At all relevant times, Defendant TRW VEHICLE SAFETY SYSTEMS INC. was and is a Delaware Corporation with its principal place of business believed to be located in Michigan and doing business in Colorado. It may be served with process through its registered agent for service Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

14.   At all relevant times, Defendant TRW AUTOMOTIVE U.S. LLC was and is a Delaware Corporation with its principal place of business believed to be located in Michigan and doing business in Colorado. It may be served with process through its registered agent for service Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

15.   At all relevant times, Defendant TRW AUTOMOTIVE INC. was and is a Delaware Corporation with its principal place of business believed to be located in Michigan and doing business in Colorado. It may be served with process through its registered agent for service Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

16.   At all relevant times, Defendant ZF TRW AUTOMOTIVE HOLDINGS CORP. was and is a Delaware Corporation with its principal place of business believed to be located in Michigan and doing business in Colorado. It may be served with process through its registered agent for service Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

17.   At all relevant times, Defendant ZF FRIEDRICHSHAFEN AG is a German corporation with its principal place of business located in Germany and doing business in Colorado. ZF FRIEDRICHSHAFEN AG is believed to have recently acquired TRW Automotive Holdings Corp., which is believed to have been renamed as Defendant ZF TRW AUTOMOTIVE HOLDINGS CORP. after the acquisition and which ZF FRIEDRICHSHAFEN AG now operates as a division.

18.   Defendants TRW VEHICLE SAFETY SYSTEMS INC., TRW AUTOMOTIVE U.S. LLC, TRW AUTOMOTIVE INC., ZF TRW AUTOMOTIVE HOLDINGS CORP., and ZF FRIEDRICHSHAFEN AG may hereinafter collectively be referred to as "ZF/TRW."

19.   ZF/TRW designed, tested, manufactured, marketed and sold the driver's seatbelt system ("the seatbelt system" or the "Seatbelt System") in the subject Impala being utilized by Macayla Razes at the time of the accident giving rise to this complaint.

## JURISDICTION AND VENUE

20.   This Court has personal jurisdiction over the Defendants because Defendants reside in and/or have transacted and continue to transact business in Colorado, and because Defendants have committed the acts and omissions complained of herein in the State of Colorado.

21.   Specifically, GM is subject to the jurisdiction of this Court as it has purposely availed itself of the privileges and benefits of doing business in Colorado, actively, both directly and through agents and franchisees, marketing vehicles and its components in the state of Colorado, including Impalas; maintains ongoing and contractual warranty repair and regulatory recall responsibilities with respect to vehicles and components operated in the State of Colorado; maintains and operates vehicle and parts distribution operations within the state of Colorado with regard to such vehicles and components; maintains a network of dealerships throughout the State of Colorado; maintains agency relationships between and amongst themselves and with their dealerships such that the acts of one of the dealerships in so operating in and regarding Colorado matters are attributable to GM; marketed and sold defective products within the state; and utilized the Court system of the State of Colorado in prosecuting and defending actions.

22.   ZF/TRW is subject to the jurisdiction of this Court as it has: purposely availed itself of the privileges and benefits of doing business in Colorado, actively, both directly and through agents, franchisees, subsidiaries and corporate divisions, marketing and manufacturing automotive components in the state of Colorado, including the Seatbelt System and similar such seatbelt systems; ongoing and contractual warranty repair and regulatory recall responsibilities with respect to ZF/TRW components in use in the State of Colorado; vehicle and parts distribution operations within the state of Colorado with regard to such vehicles and components; worked with GM to distribute its automotive components in GM vehicles through GM's network of dealerships throughout the State of Colorado; worked with other auto makers to distribute its automotive components in vehicles through those auto makers' networks of dealerships throughout the State of Colorado; agency relationships between and amongst itself and with GM and other auto makers such that the acts of one of the them in so operating in and regarding Colorado are attributable to the others; marketed and sold defective products within the state, including the Seatbelt System; and utilized the Court system of the State of Colorado in prosecuting and defending actions.

23.   Plaintiffs each claim damages in excess of $75,000 in this action, excluding costs and interest.

24.   This Court is vested with jurisdiction of this action by the diversity statute, 28 U.S.C. § 1332.

25.   This Court is vested with venue of this accident because a substantial portion of the events or omissions giving rise to the claim occurred in this judicial district and Defendants reside in and/or are deemed to reside in this judicial district, making venue appropriate pursuant

to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

26.    This action arises out of a single vehicle rollover accident that occurred on or about December 23, 2016 in Logan County, Colorado, in which Macayla Razes suffered fatal injuries.

27.    Prior to December 23, 2016, GM designed, tested, manufactured, sold and inserted into the stream of commerce a Chevrolet Impala believed to be a model year 2004 vehicle and believed to bear VIN 2G1WH52K3494206 ("the Impala" or "the subject Impala").

28.    At all relevant times, GM designed, engineered, developed, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, labeled, advertised, promoted, marketed, supplied, distributed, and sold GM vehicles to the consuming public in the State of Colorado and throughout the world, including the Impala.

29.    At all relevant times, GM designed, engineered, developed, manufactured, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, labeled, advertised, promoted, marketed, supplied, distributed, and sold Seatbelt Systems to the consuming public in the State of Colorado and throughout the world, including the Seatbelt System in the subject Impala being utilized by Macayla Razes at the time of the subject accident giving rise to this complaint.

30.    On or about December 23, 2016 Macayla Razes was the properly seatbelted driver of the subject Impala on Interstate 76 in Logan County Colorado.  At a point near Mile Point 134.3, the Impala momentarily left the roadway and after driving a short distance off and to the left of the roadway, reentered the roadway and drove towards the right and then steered left,

resulting in the vehicle losing control and driving off the left side of the roadway a second time and rolling over.

31.    During the collision, Macayla Razes was ejected and suffered fatal injuries.

32.    As a result of Macayla Razes' death, her surviving son and mother and her sister suffered injuries and losses, which will be more fully described in this Complaint.

33.    Macayla Razes' fatal injuries and Plaintiffs' resulting damages were caused by the lack of Electronic Stability Control in the subject Impala, which caused the subject rollover accident.

34.    Macayla Razes' fatal injuries were also caused by the failure of her seatbelt system, which unlatched during the rollover and caused her ejection and also by the overall lack of rollover crashworthiness of the subject Impala.

35.    Plaintiffs seek redress for the preventable death of their beloved daughter, mother and sister.

**CLAIMS AGAINST GM**

**FIRST CLAIM FOR RELIEF**
**(Strict Liability - GM)**

36.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

37.    At all times pertinent, GM was in the business of designing, testing, approving, manufacturing, marketing, distributing and selling motor vehicles, including the Impala, for use in Colorado and elsewhere throughout the United States.

38.    At the time Defendant GM sold the Impala, it was defective and because of those defects as set forth herein, it was unreasonably dangerous to persons who might reasonably be

expected to use or be affected by the Impala.

39.    The Impala was not crashworthy in design and manufacture.

40.    The Impala lacked reasonable rollover crashworthiness protections.

41.    The Impala's driver seatbelt system, including all of its components such as the belt webbing, retractors, anchors, buckle, and anchor points, as well as the overall design and geometry of the system, was inadequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the seatbelt system unlatched during the subject accident, resulting in the ejection of Macayla Razes.

42.    The Impala's rear window, side windows and sun roof glass were inadequate to reasonably protect occupants during rollover accidents. Particularly, the tempered glass used in the Impala's rear window, side windows and sunroof was designed and manufactured so as to shatter and break out when subjected to foreseeable crash forces, including forces sustained during a rollover.

43.    The Impala lacked electronic stability control ("ESC"), or similar such technology by another name (such as "StabiliTrak," the term GM sometimes uses to describe and characterize its ESC systems), that is specifically and expressly intended to prevent the loss of control that occurred with the Impala, and that would have prevented the pre-accident loss of control that led to the rollover accident. The lack of such electronic stability control was a cause of the accident. Electronic stability control was included in various GM models beginning in or about approximately 1997 and was readily available technology that GM could have and should have included in the subject Impala.

44.    The Impala lacked adequate and sufficient warnings and instructions about the

risks, dangers, and harms presented by the subject Impala and reasonable means to reduce such risks, dangers, and harms. In particular, the Impala lacked a warning that it was not equipped with electronic stability control that was included in other GM offerings, and the Impala lacked a warning that because of the absence of electronic stability control, it was likely to lose control and be involved in accidents that otherwise would be prevented by electronic stability control. The Impala also lacked a warning that its seatbelt system was subject to failure during foreseeable and survivable rollover accidents.

45.     The Impala was expected to reach the user or consumer without substantial change in the condition in which it was sold and it did in fact reach Macayla Razes without substantial change in the condition in which it was sold.

46.     At the time of the accident described above, the subject Impala was being used in a manner and fashion that was foreseeable by GM and in a manner in which it was intended to be used.

47.     Macayla Razes was a person who would reasonably be expected to use or be affected by the Impala.

48.     The Impala was defective and unreasonably dangerous because of its lack of ESC, which caused the loss of control and resulting rollover accident.  This created a risk of harm to persons which would not ordinarily be expected and which is not outweighed by the benefits to be achieved by its design.

49.     The Impala was also defective and unreasonably dangerous because of its defective driver's seatbelt system and its overall lack of rollover crashworthiness.

50.     The Impala was also defective and unreasonably dangerous because it lacked

-11-

reasonable and adequate warnings about its deficient seatbelt system, its lack of ESC and its overall lack of rollover crashworthiness.

51.     As a direct and proximate result and consequence of the conduct of Defendant GM and the defective and unreasonably dangerous nature of the Impala, Macayla Razes was killed in the collision of December 23, 2016.

52.     As a direct and proximate result of the death of Macayla Razes, Plaintiff Amber Strough and minor Plaintiff R.S., have suffered grief, loss of affection, society, companionship, guidance and counseling, pain and suffering, loss of quality of life and emotional distress and will continue to suffer these losses.  These Plaintiffs and any other statutory heirs have also suffered net pecuniary loss, loss of household services, and loss of the financial and economic support and assistance which would have been provided to them by the decedent, Macayla Razes. Plaintiff Madison Strough also suffered severe emotional distress and long-continued emotional disturbance.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the GM Defendants to be fixed by the trier of fact in a reasonable amount.

## SECOND CLAIM FOR RELIEF
### (Negligence - GM)

53.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

54.     Defendant GM had a duty to design the Impala so that occupants would be provided reasonable protection in the event of a rollover accident.

55.     Defendant GM was negligent in failing to exercise reasonable care to prevent the Impala from creating an unreasonable risk of harm to persons who might reasonably be expected

to use or be affected by the Impala while it was being used in a manner Defendant GM might reasonably have expected.

56.     Macayla Razes is in that class of persons whom Defendant GM should reasonably have expected to use or be affected by the Impala.

57.     Defendant GM was negligent in failing to exercise reasonable care to warn users of the Impala of the risk of harm associated with the foreseeable use of the vehicle.

58.     At all relevant times, GM had a duty to design and manufacture a vehicle that would provide reasonable protection to occupants in the event of a rollover accident – particularly where GM knew that its vehicle was likely to lose control and roll over during foreseeable driving conditions in which other vehicles would not lose control and roll over due to its lack of ESC.

59.     At all relevant times, GM had a duty to design and manufacture a vehicle that did not subject occupants to the unreasonable risk of ejection during rollover. In particular, GM had a duty to design its vehicles such that the various components worked in conjunction with one another to minimize the risks of ejection during rollover.

60.     At all relevant times, GM had a duty to design and manufacture a vehicle that did not subject occupants to unreasonable risks of harm during reasonably foreseeable usage of the vehicle.

61.     At all relevant times, GM negligently designed, tested, manufactured, marketed, distributed, sold, and supplied the subject Impala in that they failed to exercise reasonable care to prevent the subject Impala and its components from creating an unreasonable risk of harm to a person who might reasonably be expected to use it in an expected or reasonably foreseeable

-13-

manner. GM thereby breached their various duties set forth in this Count.

62.    GM's acts of negligence include but are not limited to the following:

a.   GM engaged in inadequate rollover crashworthiness testing of its Impala and similar vehicles.

b.   GM failed to design the Impala such that its overall packaging would provide reasonable occupant protection during rollovers.

c.   Even though it should have been obvious that occupants were at risk of sustaining serious injuries during foreseeable rollovers, GM failed to provide an appropriate restraint system in the Impala that would restrain and protect occupants during foreseeable rollovers.  The subject Seatbelt System's buckle unlatched during the subject rollover, causing the ejection of Macayla Razes.

d.   GM equipped the Impala with tempered glass in its rear window, side window openings and its sunroof opening even though it knew that such glass would shatter and break during foreseeable rollovers and thereby open up potential portals of ejection. Tempered glass was utilized even though GM was aware of the risks of ejection of occupants during rollover accidents. In particular, GM chose not to use laminated glass in the Impala's rear window, side windows and sunroof even though it knew that laminated glass would retain occupants and prevent ejections during rollovers.

e.   At the time of the design and manufacture of the subject Impala, GM was aware or should have been aware of safer alternative designs that were technologically and economically feasible, but GM chose not to incorporate those alternative

designs in the subject Impala. Indeed, GM was including safer alternative designs in other model year 2004 vehicles, including electronic stability control.

f.   At the time of the design and manufacture of the subject Impala, GM was aware of should have been aware that ESC would have prevented the type of foreseeable and common loss of control experienced by the Impala prior to leaving the roadway and rolling over.

g.   At the time of the design and manufacture of the subject Impala, GM was aware that ESC was effective in preventing injuries and deaths by preventing vehicles from losing control under foreseeable conditions such as those experienced by the Impala prior to leaving the roadway and rolling over.

h.   GM had touted the safety benefits of ESC as far back as 1997 and began incorporating it into its vehicles at that time, recognizing the "low" hardware costs of incorporating ESC into a vehicle.  Nonetheless, GM failed to install this important and effective safety feature into the subject Impala.

63.   GM knew or should have known that the Impala suffered from the following defects, yet sold the vehicle anyway, without correcting the defects, guarding against them, or warning about them:

a.   The Impala lacked reasonable rollover crashworthiness protections;

b.   The Impala's overall design and "packaging" was inadequate to protect occupants during rollovers. GM knew that these components had to work in unison as a system to be effective but failed to design them to do so.

c.   The Impala's seatbelt systems, including all of their components such as the belt

webbing, retractors, anchors, and anchor points, as well as the overall design and geometry of the system, were inadequate to reasonably restrain and protect occupants when exposed to foreseeable crash forces in rollover accidents. Particularly, the seatbelt system was unreasonably susceptible to failure and unlatching during rollover accidents.

d. The Impala's seatbelt systems lacked a buckle that would remain latched during rollover accidents.  In the subject accident, the driver's seatbelt buckle became unlatched, resulting in and causing the ejection of the driver.

e. The Impala's rear window, side windows and sunroof glass were inadequate to reasonably protect occupants during rollover accidents. Particularly, the tempered glass used in the Impala's rear window, side windows and sunroof glass was designed and manufactured so as to shatter and break out when subjected to foreseeable crash forces, including forces sustained during a rollover.  The tempered glass in the Impala's rear window, side windows and sunroof did, in fact, shatter and break during the subject rollover, opening up one or more portals through which Macayla Razes was ejected.

f. The Impala lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the subject Impala and reasonable means to reduce such risks, dangers, and harms.

g. Due to its lack of ESC, the Impala had poor handling characteristics, which resulted in an unreasonable risk of loss of control and rollover during normal, expected, and foreseeable use. This magnified the safety risks entailed by the

Impala's lack of adequate rollover crashworthiness and should have put GM on notice of the obvious need to manufacture a vehicle with adequate rollover crashworthiness protections.

h.  The Impala lacked alternative designs that could have provided better protection to occupants during rollovers. These alternative designs include but are not limited to seatbelt buckles that remain latched during rollovers and laminated window glass.   The use of a seatbelt buckle that remained latched and/or the use of laminated window glass in the Impala's rear and side window and sunroof openings would have prevented Macayla Razes' ejection and fatal injuries.

i.  The Impala also lacked alternative designs that would have prevented the subject rollover accident involving the Impala, including electronic stability control. Indeed, GM was aware of the safety benefits of ESC and was using ESC in other 2004 model year vehicles, including but not limited to most of its Cadillac offerings.  The use of ESC in the Impala would have prevented the loss of control and resulting rollover accident.

64.   GM's knowledge as described in this Complaint is believed to be reflected in reports of other incidents involving GM vehicles, including the Impala, which were designed and manufactured without electronic stability control systems.

65.   GM's knowledge as described in this Complaint is believed to be reflected in reports of other incidents involving GM vehicles, including the Impala, which were designed and manufactured with defective seatbelt systems and defective window glass.

66.   At the time of the design and manufacture of the Impala, GM was aware or should

have been aware of the defects in the Impala, including the defects set forth herein, but inserted it into the stream of commerce anyway, without seeking to design out the defects, guard against them, or provide any type of reasonable or adequate warnings to consumers such as Macayla Razes.

67.     At the time of the design and manufacture of the Impala, GM was aware or should have been aware of the Impala's lack of rollover crashworthiness, which GM knew or should have known would put occupants like Macayla Razes at risk of serious injury when involved in foreseeable rollovers in the Impala.

68.     GM's knowledge as described in this Complaint is believed to be reflected in internal communications or testing.

69.     Defendant GM breached its duty to design and manufacture the Impala to provide reasonable protection to occupants in foreseeable rear impact collisions.

70.     Defendant GM acted unreasonably in designing, manufacturing, marketing and selling the Impala with a driver's seat that presented an unreasonable risk of injury or death to its occupants, including Macayla Razes.

71.     Defendant GM's negligence was a proximate cause of the death of Macayla Razes and of the resulting injuries and losses to Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the GM Defendants to be fixed by the trier of fact in a reasonable amount.

### THIRD CLAIM FOR RELIEF
### (Breach of Warranty - GM)

72.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

73.     Defendant GM knew the particular purposes for which the Impala and its components were required and were to be used, and that purchasers and users such as Macayla Razes would rely on GM's skill or judgment in designing, testing, manufacturing and furnishing goods suitable for such purposes and uses.

74.     The Impala and its components were not fit for the particular purposes for which they were intended and for which they were used.

75.     The Impala did not conform to the warranties, affirmations and representations made by Defendant GM.

76.     The defective condition of the Impala constitutes a breach by Defendant GM of its express and/or implied warranties, rendering it liable for Plaintiffs' injuries and damages caused by the defects and inadequacies in the design and manufacture of the Impala.

77.     Defendant GM's breach of express and/or implied warranties was a proximate cause of the injuries and losses of Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the GM Defendants to be fixed by the trier of fact in a reasonable amount.

### FOURTH CLAIM FOR RELIEF
#### (Assumption of Liabilities and Successor Liability -- GM)

78.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

79.     At all times relevant hereto, Defendant General Motors LLC had assumed the liabilities of General Motors Corporation for product liability claims relating to the subject vehicle and involving accidents that occurred after July 10, 2009.

80.     General Motors LLC assumed such liabilities of General Motors Corporation

pursuant to the Orders and the Agreements entered into and approved during the course of the General Motors Corporation bankruptcy proceedings.  As such, General Motors LLC is fully liable for any and all defects in the subject Impala and for all product liabilities relating to the subject Impala, including all liabilities arising out of Claims I through III and VIII.

81.    At all times relevant hereto, Defendant General Motors LLC had assumed the liabilities for product liability claims relating to the subject vehicle and involving the subject accident.

82.    At all times relevant hereto, Defendant General Motors LLC was the successor in interest to General Motors Corporation and, as such, assumed and should be found to have assumed the liabilities of General Motors Corporation pursuant to the Colorado law of successor liability.

83.    Because General Motors LLC assumed the liability for the instant product liability claims relating to the subject Impala, and because it is the successor in interest to General Motors Corporation and thereby liable for General Motors Corporation's liabilities, General Motors LLC is strictly liable for defects in the subject Impala as is set forth herein and in Count I and General Motors LLC is liable for the other claims made against it in the other Claims herein, including Claims II, III and VIII.

84.    Defendant General Motors LLC is strictly liable to the Plaintiffs for the injuries, damages, and losses caused by defects in the design and manufacture of the subject Impala as set forth in Count I and is also liable for the injuries, damages and losses caused by the acts, omissions and misconduct set forth in the other Claims against it herein, including Claims II, III and VIII.

85.     As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Impala and the acts and omissions of GM set forth in Claims I through III and VIII herein, Plaintiffs have incurred substantial damages, set forth fully herein.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the GM Defendants to be fixed by the trier of fact in a reasonable amount.

## COUNTS AGAINST ZF/TRW

### FIFTH CLAIM FOR RELIEF
### (Strict Liability – ZF/TRW)

86.     Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

87.     At all times relevant hereto, ZF/TRW was in the business of designing, manufacturing, testing, distributing, marketing and selling automobile components incorporated into vehicles, including the Seatbelt System being utilized by Macayla Razes at the time of the accident.

88.     ZF/TRW designed, manufactured, tested (and failed to test adequately), distributed, marketed, assembled, and sold, the Seatbelt System, placing it into the stream of commerce.

89.     At the time the Seatbelt System left the control of ZF/TRW, it was defective and unreasonably dangerous to people who might reasonably be expected to use it, including the Plaintiff. These defects include, but are not limited to, the conditions described in the following paragraphs and elsewhere in this Complaint.

90.     The Seatbelt System failed to provide reasonable restraint and protection to

occupants, including in rollovers.

91.     The Seatbelt System failed to provide reasonable restraint and protection to occupants in rollover accidents.

92.     The Seatbelt System failed to remain latched and, in fact, unlatched during the subject accident sequence and thereby failed to provide any reasonable protection to its user, resulting in the occupant becoming unrestrained and getting ejected from the vehicle.

93.     The Seatbelt System's design failed to incorporate other designs and technologies that could protect occupants from foreseeable crash forces in foreseeable accidents, including rollovers.

94.     The Seatbelt System lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Seatbelt System and reasonable means to reduce such risks, dangers and harms.

95.     Because it failed to provide reasonable protection and did in fact unlatch during the subject accident, the Seatbelt System was defective and unreasonably dangerous to a person who might otherwise be expected to use it.

96.     The Seatbelt System failed during the accident to provide reasonable crash protection, causing and/or contributing to Macayla Razes' fatal injuries and the resulting injuries to Plaintiffs.

97.     The Seatbelt System was expected by ZF/TRW to reach, and did reach, the user without substantial change in the condition from when it was manufactured, sold, and placed into the stream of commerce.

98.     Because of the design and/or manufacturing flaws alleged herein, and the lack of

adequate and sufficient warnings, the Seatbelt System was defective and unreasonably dangerous to consumers like Macayla Razes who might reasonably be expected to use it.

99.   Macayla Razes was a person who would reasonably be expected to use the Seatbelt System.

100.   Defects in the Seatbelt System were a proximate cause of Macayla Razes' fatal injuries and resulting damages to Plaintiffs.

101.   ZF/TRW is strictly liable to the Plaintiffs for injuries and damages caused by defects and inadequacies in the design, manufacture, and warnings of the Seatbelt System.

102.   As a direct and proximate result of the defective and unreasonably dangerous condition of the Seatbelt System, Macayla Razes suffered fatal injuries and Plaintiffs incurred substantial injuries and damages.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the ZF/TRW Defendants to be fixed by the trier of fact in a reasonable amount.

## SIXTH CLAIM FOR RELIEF
### (Negligence – ZF/TRW)

103.   Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

104.   ZF/TRW negligently designed, engineered, developed, tested, approved, manufactured, fabricated, assembled, equipped, inspected, repaired, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold, the Seatbelt System, in that they failed to exercise reasonable care to prevent the Seatbelt System from creating an unreasonable risk of harm to people who might reasonably be expected to use it in an expected or reasonably foreseeable manner, including Plaintiff.

-23-

105.   ZF/TRW had a duty to design and manufacture the Seatbelt System to provide reasonable protection to occupants in the event of an accident. In particular, ZF/TRW had a duty to design and manufacture a Seatbelt System that would remain latched during accidents and collisions, provide a restraint function and contain occupants in the vehicle during a rollover.

106.   As the designers, manufacturers, marketers, and sellers of the Seatbelt System, ZF/TRW had a duty towards members of the general public, such as Macayla Razes, to use ordinary care to avoid foreseeable risks of injury caused by defects and inadequacies in the Seatbelt System.

107.   ZF/TRW breached their aforesaid duties, in that they failed to exercise reasonable care to prevent the Seatbelt System from creating an unreasonable risk of harm to persons who might reasonably be expected to use the Seatbelt System and the Impala in foreseeable ways.

108.   ZF/TRW negligently failed to incorporate into the Seatbelt System other designs and technologies which could protect occupants in accidents and contain them inside the vehicle during foreseeable accidents, including rollovers.

109.   ZF/TRW failed to provide adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the Seatbelt System and reasonable means to reduce such risks, dangers and harms.

110.   ZF/TRW acted unreasonably in designing, manufacturing, marketing and selling, a vehicle containing a Seatbelt System that was incapable of providing reasonable restraint and protection to occupants and presented a substantial and unreasonable risk of injury or death to vehicle occupants, including the Plaintiff.

111.   ZF/TRW acted unreasonably in designing, manufacturing, marketing and selling a

-24-

Seatbelt System that was unreasonably susceptible to unlatching during accidents and that did, in fact, unlatch during the subject rollover accident.

112.   ZF/TRW knew or should have known that the Seatbelt System would not provide adequate protection to occupants involved in foreseeable accidents, including rollovers.

113.   ZF/TRW knew or should have known that the Seatbelt System would subject occupants to the risk of serious injury and death due to its propensity to unlatch, thereby putting occupants at risk of ejection during rollovers.

114.   ZF/TRW's knowledge as described in this Complaint is believed to be reflected in reports of other incidents involving vehicles containing TRW seatbelt systems.

115.   As a direct and proximate result of the negligence of ZF/TRW, Macayla Razes was killed and Plaintiffs incurred substantial damages, which are set forth herein.

116.   ZF/TRW's negligent actions and omissions were a proximate cause of the fatal injuries to Macayla Razes and the resulting injuries and damages to Plaintiffs.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the ZF/TRW Defendants to be fixed by the trier of fact in a reasonable amount.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Warranties – ZF/TRW)

117.   Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein.

118.   Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

119.   ZF/TRW knew the particular purposes for which the Seatbelt System and its components were required and were to be used, and that purchasers and users such as the

Impala occupants would rely on ZF/TRW's skill or judgment in designing, testing, manufacturing, furnishing and selling goods suitable for such purposes and uses.

120.   The Seatbelt System was not free from defects or fit for the purpose for which it was to be used, and was in fact defectively designed, manufactured, and distributed and imminently dangerous to occupants and users, and in fact did cause, serious and permanent injuries to the occupant and user thereof while being used in a manner reasonably foreseeable to ZF/TRW. As a result, the Seatbelt System was unsafe and dangerous for use by the consumer and in particular by the Impala driver Macayla Razes.

121.   ZF/TRW expressly and/or impliedly warranted to the Impala occupants and foreseeable users of the Impala that the Seatbelt System was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects. In particular, ZF/TRW expressly and/or impliedly warranted that the seatbelt system would provide protection during accidents and remain latched during accidents.

122.   ZF/TRW expressly and impliedly warranted to purchasers and users of the Impala, including the Impala occupants, that the Seatbelt System was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use.

123.   ZF/TRW impliedly warranted to the Impala occupants and foreseeable users of the Impala that the Seatbelt System was fit for the purpose for which it was intended to be used and was free from manufacturing and design defects. In particular, ZF/TRW impliedly warranted that the seatbelt system would provide protection during accidents and remain latched during accidents.

124.   ZF/TRW expressly and/or impliedly warranted to purchasers and users of the Impala, including the Impala occupants, that the Seatbelt System was suitable for its intended use, was of merchantable quality, and would provide adequate protection for its intended and foreseeable use. Specifically, ZF/TRW impliedly warranted that the Impala's Seatbelt System would provide occupant protection and would remain latched in reasonably foreseeable accidents including rollovers.

125.   The Seatbelt System was defective and was not of merchantable quality and was not fit for its intended purpose in that it was capable of causing, and, in fact, did cause serious and permanent injuries to users and consumers thereof, including the Impala occupant and driver Macayla Razes while being used in a manner reasonably foreseeable to ZF/TRW.

126.   As a direct and proximate result of the breach ZF/TRW of their express and implied warranties, Macayla Razes suffered fatal injuries and Plaintiffs suffered injuries and damages.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of damages against the ZF/TRW Defendants to be fixed by the trier of fact in a reasonable amount.

## CLAIMS AGAINST ALL DEFENDANTS

### EIGHTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional
### Distress/Bystander Liability – GM and ZF/TRW)

127.   Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein.

128.   At the time of the subject collision in which Macayla Razes was fatally injured,

Plaintiffs R.S. and Madison Strough were closely related to and had a close familial

relationship to Macayla Razes. R.S. was Macayla Razes' son, and Madison Strough was

Macayla Razes' sister.

129.   R.S. and Madison Strough were occupants in the Subject Impala at the time of

the rollover accident and were present at the time that Macayla Razes suffered her fatal injuries

and were then and there aware that Macayla Razes had suffered serious injuries.

130.   R.S. and Madison Strough were in the zone of danger created by the rollover

accident and were reasonably in fear for their own safety and Macayla Razes' safety at the time

of the rollover accident.

131.   As a result of being present in the vehicle and in the zone of danger, being

reasonably in fear for their safety, and being then aware that the collision caused serious injury

to Macayla Razes, R.S. and Madison Strough suffered severe emotional distress far beyond that

which would be anticipated in a disinterested witness.

132.   As a further direct and proximate result of the aforesaid conduct of defendants,

Plaintiffs R.S. and Madison Strough suffered severe emotional distress and long-continued

emotional disturbance and have thereby sustained losses and damages, which will be stated

according to proof at trial.

WHEREFORE, the Plaintiffs demand judgment in their favor and pray for an award of

damages against the Defendants to be fixed by the trier of fact in a reasonable amount.

## CAUSATION & DAMAGES
### (All Defendants)

133.   Plaintiffs incorporate herein all allegations made elsewhere in this Complaint.

134. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject Impala and the subject Seatbelt System and the Defendants' acts and omissions set forth above, Plaintiffs have incurred and seek the following general and special damages:

(a) Pain and suffering and emotional distress, past and future;

(b) Loss of future earning capacity, lost household services, and other pecuniary losses arising out of the death of Macayla Razes;

(c) The value of Macayla Razes' guidance and counseling to her son, R.S.;

(d) Funeral expenses;

(e) Inconvenience;

(f) Loss of enjoyment of life or impairment of the quality of life;

(g) Lost love and affection, loss of companionship and loss of consortium arising out of the death of their son;

(h) Severe emotional distress and long-continued emotional disturbance suffered by R.S. and Amber Strough;

(i) Any other losses and damages sustained by Plaintiffs and/or any other statutory heirs and to which they are legally entitled either pursuant to statute or the common law.

**WHEREFORE,** the Plaintiffs demand judgment in their favor and pray for an award of damages against the Defendants to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiffs ask for the costs of this action, attorneys' fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which they are legally

entitled and as the Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Dated this 21st day of December, 2018.

Respectfully submitted,

By:     s/ *Paul J. Komyatte*
        Paul J. Komyatte #022750
        The Komyatte Law Firm LLC
        1536 Cole Blvd., Bldg. 4, Suite 300
        Lakewood, CO 80401
        Phone No. (720) 975-8553
        Fax No. (720) 528-8072
        Email  paul@komyattelawfirm.com

        s/ *David Mason*
        David Mason  #41333
        The Komyatte Law Firm LLC
        1536 Cole Blvd., Bldg. 4, Suite 300
        Lakewood, CO 80401
        Phone No. (720) 975-8553
        Fax No. (720) 528-8072
        Email  dave@komyattelawfirm.com

        **ATTORNEYS FOR PLAINTIFFS**

-30-